LTG

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

19    665MJ

UNITED STATES OF AMERICA

- against –

LAWRENCE ROSS,

Defendant.

and

IN THE MATTER OF THE SEARCH OF:

(1) THE PREMISES KNOWN AND
DESCRIBED AS 64 SOUTH CLINTON
AVENUE, APARTMENT 6A,
BAYSHORE, NEW YORK 11706,
(SUBJECT PREMISES #1);

(2) A BLACK 2016 NISSAN MAXIMA,
NYS LICENSE PLATE JGN1728
(SUBJECT PREMISES #2);

(3) ALL DIGITAL DEVICES AND
DIGITAL MEDIA LOCATED IN
SUBJECT PREMISES #1 AND/OR
SUBJECT PREMISES #2 AND/OR ON
THE PERSON OF LAWRENCE ROSS
FROM 2018 TO THE PRESENT (SUBJECT
PREMISES #3)

(4) ALL CRYPTOCURRENCY LOCATED
IN SUBJECT PREMISES #1 AND/OR
SUBJECT PREMISES #2 AND/OR
SUBJECT PREMISES #3 AND/OR ON
THE PERSON OF LAWRENCE ROSS
FROM 2018 TO THE PRESENT
("SUBJECT PREMISES #4).

**TO BE FILED UNDER SEAL**

**AFFIDAVIT IN SUPPORT
OF AN ARREST AND
SEARCH WARRANT**

Case No.

## AFFIDAVIT IN SUPPORT OF AN ARREST WARRANT AND AN APPLICATION UNDER RULE 41 FOR A WARRANT TO SEARCH AND SEIZE

SEAN T. MCGUIRE, being duly sworn, deposes and states that he is a Postal Inspector with the United States Postal Inspection Service ("USPIS"), duly appointed to law and acting as such.

Upon information and belief, there is probable cause to believe that there will be located at (1) THE PREMISES KNOWN AND DESCRIBED AS 64 SOUTH CLINTON AVENUE, APARTMENT 6A, BAYSHORE, NEW YORK 11706, (SUBJECT PREMISES #1); (2) A BLACK 2016 NISSAN MAXIMA, NYS LICENSE PLATE JGN1728 (SUBJECT PREMISES #2); (3) ALL DIGITAL DEVICES AND DIGITAL MEDIA (SUBJECT PREMISES #3); AND (4) ALL CRYPTOCURRENCY CONTAINED IN ANY AND ALL DIGITAL DEVICES (SUBJECT PREMISES #4), within the EASTERN DISTRICT OF NEW YORK, described in Attachment A, the items described in Attachment B, all of which constitute evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846, (drug trafficking and drug trafficking conspiracy).

On or about and between November 2018 and the present, within the Eastern District of New York and elsewhere, the defendant LAWRENCE ROSS did knowingly and intentionally conspire to distribute and possess with intent to distribute a substance containing ecstasy, a Schedule I controlled substance and a substance containing crystal methamphetamine, a Schedule II controlled substance in violation of Title 21, U.S.C. § 841(a)(1).

(Title 21, United States Code, Section 846)

2

The source of my information and the grounds for my belief are as follows:

1.      I am a Postal Inspector with the USPIS, and have been since 2015.  In connection with my official duties, I investigate criminal violations of Titles 18 and 21, and others of the United States Code.  As a part of my official duties, I have directed and/or participated in criminal investigations, arrests, and searches for violations of federal law. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## BACKGROUND

2.      The "clear" or "surface" web is part of the internet accessible to anyone with a standard browser and that standard web search engines can index.  The deep web is the part of the internet whose contents are not indexed by standard web search engines.  The dark net is a part of the deep web that not only cannot be discovered through a traditional search engine, but also has been intentionally hidden and is inaccessible through standard browsers and methods.

3.      The dark net is accessible only with specific software, configurations, and/or authorization, including non-standard communications protocols and ports, such as a TOR ("The Onion Router") browser.  A TOR browser is designed specifically to facilitate anonymous communication over the internet.

4.      Dark net marketplaces operate on the dark net.  These sites are generally only accessible through the input of specific addresses in a TOR browser.  The dark net marketplaces function primarily as black markets, selling or brokering transactions involving

drugs, cyber-arms, weapons, counterfeit currency, stolen credit card details, forged documents, unlicensed pharmaceuticals, steroids, and other illicit goods as well as the occasional sale of legal products. Dark net vendors (also known as distributors) operate on these dark net markets as sellers of these goods. They provide detailed information about their wares on these sites, including listings of their drugs for sale, contact information (such as TOR-based email or encrypted messaging applications), and the prices and quantities of drugs for sale. Items purchased through dark net vendors are generally paid for in cryptocurrency such as Bitcoin. Cryptocurrency or virtual currency permits the anonymous exchange of unlimited amounts of digital currency to anyone in the world without the use of traditional banks or banking systems. Customers purchase these goods using a computer or smartphone.

5. I am aware that some dark net marketplace vendors conduct the entirety of their transactions on the dark web marketplace. Other vendors use the sites as an advertising base and messaging system and conduct their financial business in peer-to-peer transactions in order to avoid using third party escrow systems that they believe could be subject to law enforcement seizures as well as thefts, hacks, and scams.

6. Bitcoin is a type of virtual currency, circulated over the internet. Bitcoin are not issued by any government, bank, or company, but rather are controlled through computer software operating via a decentralized, peer-to-peer network. Bitcoin is just one of many varieties of virtual currency.

7. Bitcoin are sent to and received from Bitcoin "addresses." A Bitcoin address is somewhat analogous to a bank account number and is represented as a 26-to-35-character-long case-sensitive string of letters and numbers. Each Bitcoin address is controlled through the use of a unique corresponding private key. This key is the equivalent of a password,

or PIN, and is necessary to access the Bitcoin address. Only the holder of an address' private key can authorize any transfers of Bitcoin from that address to other Bitcoin addresses. Users can operate multiple Bitcoin addresses at any given time and may use a unique Bitcoin address for each and every transaction.

8.    I am aware that individuals conducting business in this manner must use a computer or other electronic device, such as a smartphone, tablet, or computer to conduct transactions involving bitcoin. Users of bitcoin must establish electronic wallets to receive and send the bitcoin during these transactions. These wallets are electronic in nature and may be stored on mobile devices (phones or tablets), external or removable media, or computers. They may also be stored on third party wallet providers (such as Armory). Individuals often associate email accounts with these wallet providers and store information relating to that wallet on their email account. Your affiant is also aware that individuals conducting business by bitcoin can back-up wallets to paper printouts that would contain information to restore the wallet in an electronic form (cold storage). Passwords for access to electronic wallets are typically complex and are often written down or saved in an accessible manner on paper or on some electronic device. They are also often stored on email accounts, cloud or shared drives stored online (such as Google Drive), and other online storage mediums.

## PROBABLE CAUSE

9.    In November 2018, the USPIS received information that an individual, later identified by law enforcement as defendant LAWRENCE ROSS, was selling various controlled substances on the dark web utilizing the screen name "Gladyman," through several successive marketplaces, and accepting cryptocurrency in the form of Bitcoin in payment. Between January and April 2019, I purchased ecstasy from Gladyman via the dark web and

paid for the pills with Bitcoin.  The pills were then sent via U.S. Mail to an undercover P.O. Box.  After several transactions with Gladyman, I began to engage with Gladyman on Wickr[1] as Gladyman advertised on his dark web profile the ability to communicate with him via Wickr at screenname "Sweettooth80."

10.     The investigation began in approximately November 2018, when a box sent via U.S. mail containing ecstasy was seized by the Postal Inspection Service.  Using various law enforcement databases, Postal Inspectors traced the box back to the defendant LAWRENCE ROSS, who had shipped the box from his residence at 160 Tabor Street, Brentwood, New York by handing it to a postal carrier who remembered him.  Thereafter, a search of law enforcement databases revealed that defendant ROSS was convicted of Criminal Possession of a Controlled Substance (ecstasy) with intent to sell in 2017 and was paroled to the Tabor Street location in August 2018.  Defendant ROSS is currently under NYS parole supervision, and will be until 2020.

11.     Also in March 2019, agents with Homeland Security Investigations seized a pill press die[2] with a "G" on one side and a picture of a "lady" on the other side (Glady) that was scheduled to be delivered to defendant LARRY ROSS at 160 Tabor Street, Brentwood, New York. (See Exhibit 1).  Based on my training and experience, I know that a

---

[1]     Wickr is a peer-to-peer instant messaging app that allows users to exchange end-to-end encrypted and content-expiring messages, including photos, videos, and file attachments and place end-to-end encrypted video conference calls.

[2]     A pill press die is an attachment for a pill press machine that can be personalized and enables the user to stamp a pill with a brand name for advertising purposes.

pill press die is used to imprint a symbol or word(s) on a pill (usually ecstasy) for marketing purposes.

12.     Thereafter, law enforcement agents set up surveillance at 160 Tabor Street in Brentwood, and followed an individual to 64 SOUTH CLINTON AVENUE, APARTMENT 6A, BAYSHORE, NEW YORK 11706, (SUBJECT PREMISES #1). Thereafter, between April 2019 and the present, law enforcement agents observed defendant ROSS present at SUBJECT PREMISES #1 on a daily basis and, thus, placed a pole camera facing the front of the location. Both the pole camera and physical surveillance confirmed that the defendant ROSS lives at SUBJECT PREMISES #1.

13.     Then, on May 31, 2019, utilizing an undercover Wickr account, I ordered 100 ecstasy pills from defendant LAWRENCE ROSS at screenname Sweettooth80.   I transferred .11916871 Bitcoin ($1,000) from my digital wallet to defendant ROSS's digital wallet.   While I was communicating this order to the defendant ROSS via Wickr, law enforcement officers were surveilling SUBJECT PREMISES #1.   A few hours after placing the order, law enforcement officers observed the defendant ROSS exit SUBJECT PREMISES #1, get into A BLACK 2016 NISSAN MAXIMA, NYS LICENSE PLATE JGN1728 (SUBJECT PREMISES #2), and drive to the Islip Post Office.   At the Post Office, defendant ROSS dropped off 33 packages including a package addressed to me at my undercover name and P.O. Box. (See Attachment 2).   The package was seized by law enforcement officers and determined to contain 100 pills that tested positive for the presence of ecstasy.   (See Attachment 3).

14.     Then, on June 5, 2019, again utilizing an undercover Wickr account, I ordered 5 grams of crystal methamphetamine from defendant LAWRENCE ROSS at

screenname Sweettooth80. I transferred .02964667 Bitcoin ($228.17) from my digital wallet to defendant ROSS's digital wallet. While I was communicating this order to the defendant ROSS via Wickr, law enforcement officers were surveilling SUBJECT PREMISES #1. A few hours after placing the order, law enforcement officers observed the defendant ROSS exit SUBJECT PREMISES #1, get into SUBJECT PREMISES #2, and drive to the Bay Shore Post Office. At the Post Office, defendant ROSS dropped off 61 packages including a package addressed to me at my undercover name and P.O. Box. (See Attachment 4). The package was seized by law enforcement officers and searched, and approximately 5 grams of a substance that tested positive for the presence of crystal methamphetamine was recovered from the box. (See Attachment 5).

15. Then, on June 13, 2019, again utilizing an undercover Wickr account, I ordered 30 grams of crystal methamphetamine and 10 ecstasy pills from defendant LAWRENCE ROSS at screenname Sweettooth80. I transferred .12224276 Bitcoin ($1,000.73) from my digital wallet to defendant ROSS's digital wallet. While I was communicating this order to the defendant ROSS via Wickr, law enforcement officers were surveilling SUBJECT PREMISES #1. A few hours after placing the order, law enforcement officers observed the defendant ROSS exit SUBJECT PREMISES #1, get into SUBJECT PREMISES #2, and drive to the Islip Post Office. At the Post Office, defendant ROSS dropped off 36 packages including a package addressed to me at my undercover name and P.O. Box. (See Attachment 6). The package was seized by law enforcement officers and searched, and approximately 30 grams of a substance that tested positive for the presence of crystal methamphetamine and 10 pills that tested positive for the presence of ecstasy were recovered from the box. (See Attachment 7).

16.     On July 18, 2019, a review of the pole camera reveals that defendant LAWRENCE ROSS continues to send out packages from SUBJECT PREMISES #1.

17.     Based upon my training and experience I believe that the defendant ROSS stores his supply of illegal drugs, drug paraphernalia, electronic devices, including cellular telephones, computers, digital media such as thumb drives, and other electronic tools of the narcotics trade in SUBJECT PREMISES #1. Defendant ROSS accepts daily orders via the dark web and Wickr and regularly exits SUBJECT PREMISES #1 holding packages already addressed with shipping labels printed inside the premises, thus, I believe that he has at least multiple electronic devices in addition to the cellular telephone(s) that he utilizes.

18.     Law enforcement officers have also observed defendant ROSS utilize SUBJECT PREMISES #2 on almost a daily basis to transport packages believed to contain illegal drugs. Thus, at any given time SUBJECT PREMISES #2 contains evidence of his narcotics trafficking activities.

19.     I am aware that defendant ROSS has various electronic wallets containing Bitcoin, which are proceeds of narcotics transactions. Once SUBJECT PREMISES #3 are seized, based on my training and experience, I and other agents with electronic expertise will be able to access the defendant ROSS's digital wallets and freeze the accounts as evidence of narcotics trafficking offenses.

20.     I am aware that individuals involved in narcotics trafficking often maintain records linking them to their trafficking activity and their drug trafficking associates. These records may be stored physically or digitally on computers or other electronic devices or media. These records may include notes, records or ledgers of narcotics sales, debts owed,

past or future shipments, and other records, including telephone records, which identify customers and/or other co-conspirators, in digital or paper form.

21.     Based upon my training and experience, I knows that communication through electronic devices – such as through telephone calls, texts, chat, email, instant messaging, and other applications – enables drug distributors to maintain constant contact with associates, drug suppliers, and customers.  Your Affiant knows that it is common for drug trafficking organizations to use these applications to communicate with associates relating to the logistics of their drug trafficking business and store information (purposely or inadvertently) relating to their unlawful activities.

22.     Additionally, drug traffickers often use or otherwise store data about importation, transportation, ordering, purchasing, shipping, and distribution of controlled substances on electronic devices.  These communications and other records also tend to establish the traffickers' identities.  Based on my training and experience, I am also aware that drug traffickers often use electronic devices to facilitate the purchase of illegal drugs.  These electronic devices often contain financial data relating to the transactions, such as bank account numbers, bank records, credit card numbers, credit card account information used for the purchase of illegal drugs, and all identifying information for the same.  The communications and other data often also demonstrate the drug trafficker's state of mind.

23.     Based on my experience and training as a law enforcement officer, my conversations with other law enforcement officials, and my experience with this investigation, I believe that there is probable cause to believe that the SUBJECT PREMISES #1, #2, #3 and #4 will contain the property described in Attachment B.

24.     In order to prevent the permanent loss of highly probative evidence related to an ongoing dark net drug investigation, it is respectfully requested that agents have permission to execute this search warrant without a knock and announce by law enforcement. I am aware based on my training, experience, and consultation with other law enforcement that individuals who engage in criminal behavior involving the dark net and other anonymizing technology oftentimes use encryption software that, if activated, would thwart law enforcement's ability to obtain evidence.  This activation can be done in as simple a manner as closing a laptop or pressing a button on a keyboard.  Upon encrypting the device, there is often no way for law enforcement to successfully access it, even with the use of advanced decryption technology.  Given the fact that an electronic device associated with the criminal enterprise would hold highly relevant evidence to the investigation, it is critical that law enforcement are able to quickly secure the occupant(s) and any devices before any encryption takes place.  Knocking and announcing law enforcement presence would allow the target enough time to lock electronic devices, including computers, which would possibly eliminate any opportunity for law enforcement to review evidence stored electronically on recovered devices.  Moreover, based upon law enforcement surveillance of SUBJECT PREMISES #1, I believe that defendant LAWRENCE ROSS resides at that location alone.

## THE AUTHORIZATION REQUESTS

WHEREFORE, I respectfully request that a search warrant issue allowing law enforcement agents to search SUBJECT PREMISES #1, #2, #3 and #4 without knocking, at any time during the day, as described in Attachment A, therein to seize the property described in Attachment B, all of which constitutes evidence, fruits and instrumentalities of violations of

11

Title 21, United States Code, Sections 841 and 846.

IT IS FURTHER requested that this application and the search warrant be placed under seal until further order of this Court, in order to protect the integrity of the investigation described above, to ensure that no target of this investigation flee, and to ensure the safety of the agents and others.

WHEREFORE, your deponent respectfully requests that a warrant be issued for the defendant LAWRENCE ROSS, so that he may be dealt with according to law.

SEAN T. MCGUIRE
Postal Inspector
USPIS

Sworn to before me this
22nd day of July, 2019

THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

# ATTACHMENT A

## DESCRIPTION OF THE PREMISES TO BE SEARCHED

(1)    64 SOUTH CLINTON AVENUE, APARTMENT 6A, BAYSHORE, NEW YORK 11706, (SUBJECT PREMISES #1);

(2)    A BLACK 2016 NISSAN MAXIMA, NYS LICENSE PLATE JGN1728 (SUBJECT PREMISES #2);

(3)    ALL DIGITAL DEVICES AND DIGITAL MEDIA LOCATED IN SUBJECT PREMISES #1 AND/OR SUBJECT PREMISES #2 AND/OR ON THE PERSON OF LAWRENCE ROSS FROM 2018 TO THE PRESENT (SUBJECT PREMISES#3);

(4)    ALL CRYPTOCURRENCY LOCATED IN SUBJECT PREMISES #1 AND/OR SUBJECT PREMISES #2 AND/OR SUBJECT PREMISES #3 AND/OR ON THE PERSON OF LAWRENCE ROSS FROM 2018 TO THE PRESENT ("SUBJECT PREMISES #4).



## ATTACHMENT B

Items to be searched for, located and seized from the SUBJECT PREMISES #1, #2, #3 and #4, described more fully in ATTACHMENT A, are those constituting evidence, fruits and instrumentalities of violations of Title 21, United States Code, Sections 841 and 846, relating to the distribution of controlled substances and controlled substance analogues, including but not limited to the following:

1. quantities of ecstasy, crystal methamphetamine and other controlled substances;

2. digital devices, including, but not limited to, cellphones, computers, thumb drives, tablets and any other device capable of connecting to the internet and any and all digital wallets containing Bitcoin or other cryptocurrency from 2018 to the present;

3. books and records including names, addresses and telephone numbers of narcotics purchasers and suppliers, which books and records would reveal the identities of confederates in narcotics trafficking;

4. books and records reflecting the delivery of shipments of ecstasy, crystal methamphetamine, and/or any other narcotics drug, as well as sale of, or payment for any narcotics, including but not limited to packaging for shipment, receipts, invoices, or wire transfer service records;

5. currency used to purchase ecstasy or other controlled substances or which reflects the proceeds of sales of ecstasy or other controlled substances, including cryptocurrency from 2018 to the present;

6. drug paraphernalia including glassine bags, capsules, scales, stamps, and cutting agents; and





**F**

US POSTAGE AND FEES PAID   **easypost**

2019-05-31
11735
C26321
Commercial
3.0 OZ ZONE 1

0901000000422



## USPS FIRST-CLASS PKG

FANATICS.COM
33 2ND AVE
FARMINGDALE NY 11735-5709

**0029**

B007

MIKE WINTERS
PO BOX 777
UNIONDALE NY 11553-0777

---

### USPS TRACKING #



9400 1368 9784 6871 5088 62









**F**

US POSTAGE AND FEES PAID
2019-06-13
11735
C26321
Commercial
2.0 OZ ZONE 1

easypost

0901000000065

## USPS FIRST-CLASS PKG

GOLF TEE KING
356 CONKLIN ST
FARMINGDALE NY 11735-2609

**0029**

B007

MIKE WINTERS
PO BOX 777
UNIONDALE NY 11553-0777



## USPS TRACKING #

9400 1368 9784 6895 5741 64

